UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON L. REID,<br><br>       Plaintiff,<br><br>    v.<br><br>C. ALLISON, et al.,<br><br>       Defendants. | Case No.: 1:22-cv-01437-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**<br><br>(Doc. 2)<br><br>**Clerk of the Court to Assign District Judge**<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Carlton L. Reid is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

### I.     RELEVANT BACKGROUND

Plaintiff filed his complaint in this action on November 8, 2022. (Doc. 1.) On that same date, Plaintiff filed a "Notice of Motion for Temporary Restraining Order and Preliminary Injunction; Rule 65(a) Federal Rule of Civil Procedure." (Doc. 2.)

More specifically, Plaintiff declares that on September 19, 2022, a JPay tablet was removed from his cell during a search on Facility C at the Substance Abuse Treatment Facility (SATF). (Doc. 2 at 2.) Three weeks later, Plaintiff received a "'cell search slip'" indicating the reason for the removal was "'Per state policy' that did not include a specific code number" for reference. (*Id.*) Plaintiff declares these actions followed those taken in August 2022 when staff

1 came to Facility C "to collect/take JPay tablets from inmates." Plaintiff declares the inmates were
2 told they "could (1) give them up, (2) after that day they would be considered contraband (3) our
3 data would go to the 'cloud,' and (4) our [families] would be responsible for obtaining our
4 remaining funds from JPay." (*Id*.) Plaintiff declares these actions to be contrary to a June 28,
5 2022 memorandum indicating CDCR was aware the inmates had "received photos, videos and
6 messages, and have paid for some content" and indicated more information would be provided
7 concerning "how content will be moved to your new tablet, as well as how you will receive any
8 unused money left on your tablet." (*Id*.) The memorandum further indicated inmates were
9 permitted to possess "two tablets during this transition period." (*Id*.) Plaintiff further declares that
10 SATF "staff would issue JPay tablets to inmates who had already purchased them on June 30,
11 2022, and had done so in May 2022." (*Id*. at 3.)

12 Plaintiff declares JPay kiosks were available in every section of Facility C and that
13 inmates could "'fund their media accounts with JPay from" their prison trust account via a
14 transfer using the kiosk. (Doc. 2 at 3.) Plaintiff declares such transactions have been permitted for
15 approximately five years following CDCR's contract with "Global Telelink (now ViaPath but
16 will be referred to as GTL)." (*Id*.)

17 Further, Plaintiff declares neither CDCR nor its staff made clear to inmates who
18 purchased JPay tablets that the tablets were not their property, that CDCR was treating the
19 transaction as a "rental of their property," or that the tablets and content "would not belong to
20 them throughout their sentence." (Doc. 2 at 3.)

21 Plaintiff declares these actions are "a fraud upon the inmate population" because CDCR
22 did not advise the inmates they did not own the tablets and because the June 2022 memorandum
23 falsely stated the inmates would be permitted to "maintain 'two' tablets (JPay and GTL)" during
24 the transition period. (Doc. 2 at 3.) Plaintiff declares transfers "did not work" and that CDCR had
25 no authority "to employ" Plaintiff's family members to recover money remaining on the JPay
26 account. (*Id*.) Plaintiff declares CDCR entered a contract with JPay, "did wire transfers for JPay,
27 and took means of proof of business done and money owed (Plaintiff's)" and that he never
28 received receipts from JPay. (*Id*.) Plaintiff declares "any evidence was located on the kiosk that

no longer function or the tablet(s) that CDCR is now dispossessing inmates of." (*Id*.) He declares the "takings of his property without due process or just compensation" have caused irreparable harm "in that the tablet has value based upon the content that has been purchased and can only be enjoyed" when it is used. (*Id.*) Plaintiff declares he has no ability, right or license to resell the music or games that were a one-time purchase. (*Id*. at 4.)

Finally, Plaintiff declares "the Plaintiff(s) are entitled to a temporary restraining order requiring the defendant(s) to refrain from taking any more tablets, and to return those that have been taken, and to a preliminary injunction requiring the defendant(s) to carry out the order." (Doc. 2 at 4.)

In supporting memorandum of law, Plaintiff contends the "Plaintiff(s) seek a temporary restraining order and preliminary injunction to ensure the violations do not continue and to have returned what property has been taken." (Doc. 2 at 5.) Plaintiff states the "Plaintiff(s) allege they have been denied due process" under the Fifth and Fourteenth Amendments. (*Id*.) Plaintiff argues the "Plaintiff(s) are threatened with irreparable harm in that once the property is taken and sent out of the institution," that property cannot be returned or "reenter" the institution and thus "Plaintiff(s) economical investment is lost." (*Id*. at 6.) Both content and receipts are a complete loss. (*Id*.)

Next, Plaintiff contends the balance of hardships favors the "Plaintiff(s)." (Doc. 2 at 6.) Plaintiff argues "the present harm to Plaintiff(s) is the permanent loss of property that ranges from the hundreds to thousands of dollars in money lost invested in the tablet(s) themselves and the content purchased by and which can 'only' be enjoyed by use of the tablet." (*Id*.) Plaintiff essentially contends the defendants would not suffer because there will be "less paperwork, a less hostile environment, and business as usual." (*Id.*)

Plaintiff contends the "Plaintiff(s) have a great likelihood of success on the merits" because "defendant(s) have done-dispossessing Plaintiff(s) of their property, defrauding Plaintiff(s) out of their financial investment, and violating the Fifth and Fourteenth Amendments." (Doc. 2 at 6.) Plaintiff argues "even prisoners have the [C]onstitution as a barrier between then and the state against arbitrary action as to property where a 'real property interest'

3

is shown." (*Id*. at 6-7.) Plaintiff further argues granting the requested relief "will serve the public interest because it is always in the public interest for prison officials to obey the law, especially the Constitution." (Doc. 2 at 7.)

Lastly, Plaintiff contends "Plaintiff(s)" should not be required to post security because "the specific property interest confronting Plaintiff(s) and prison official constantly, consistantly [sic], and arbitrarily taking the specific property of JPay tablets" weighs in favor of this Court granting relief "without requiring the posting of security." (Doc. 2 at 7.)

## II.     DISCUSSION

### *A.     Applicable Legal Standards*

"A preliminary injunction is an extraordinary remedy never awarded as of right."[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).

A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party must appear to defend"). The court may not attempt to determine the rights of persons not before it. *See, e.g*., *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C). "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr*., 810 F.3d 631, 633 (9th Cir. 2015).

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the

---

[1] "The standard for a [temporary restraining order] is the same as for a preliminary injunction." *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (citation omitted).

4

Prison Litigation Reform Act (PLRA), which requires the Court find that the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right."

On the merits, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

### B. Analysis

#### 1. Lack of Personal Jurisdiction

A review of the complaint filed November 8, 2022, reveals Plaintiff named CDCR Secretary Cathline Allison and SATF Warden Theresa Cisneros as defendants. (Doc. 1 at 1, 3-4.) Significantly however, no defendant has been served in this action, nor has any defendant filed an appearance. Thus, this Court does not have personal jurisdiction over the named defendants and may not act at this time. *Murphy Bros., Inc.,* 526 U.S. at 350; *Hitchman Coal & Coke Co.*, 245 U.S. at 234-35; *Zepeda*, 753 F.2d at 727-28.

#### 2. Additional Plaintiffs

Plaintiff's complaint includes a list of "Additional Plaintiff(s)" listing approximately 25 names. (Doc. 1 at 2.) Further, it states the "list of Plaintiffs is likely to grow and Plaintiff(s) do wish to have an opportunity to amend and add to this list of those who have not had an opportunity to join in the suit." (*Id.*)

To the extent Plaintiff seeks relief on behalf of other prisoners, he has no standing to do so. *See Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party"). Plaintiff also may not represent a class of inmates in a putative class action. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008) ("As the district court accurately pointed out, courts have routinely

adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity"); *Claxton v. Ryan*, No. CV 11–934–PHX–GMS (ECV), 2011 WL 2533554, at *1–2 (D. Ariz. June 27, 2011) (noting that pro se plaintiffs "may not appear as an attorney for other persons in a class action"); *Reed v. Board of Prison Terms*, No. C 03–2917 MMC PR, 2003 WL 21982471, at *1 (N.D. Cal. Aug. 8, 2003) ("Pro se prisoner plaintiffs may not bring class actions because they are not adequate class representatives able to fairly represent and adequately protect the interests of the class").

Even if this Court had personal jurisdiction over the named Defendants, as set forth below, Plaintiff has not established that he is likely to succeed on the merits[2] or that he is likely to suffer irreparable harm.

### 3. **PLRA Applicability**

Additionally, Plaintiff's requested relief runs afoul of the PLRA because the relief he seeks is not narrowly drawn nor does it involve the least intrusive means necessary. That is so because Plaintiff seeks relief beyond that which would provide him relief; he seeks relief for all inmates. And as noted above, Plaintiff has no standing to do so.

### 4. **The *Winter* Factors**

#### A. The Merits

In deciding whether a preliminary injunction should issue, the likelihood of success on the merits is the most important factor for the court to consider. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Here, the Court is unable to find that Plaintiff has carried his burden of demonstrating he is likely to succeed on the merits of this action because his motion fails to identify legal authority that would entitle him to the relief he seeks. *Winter*, 555 U.S. at 20.

---

[2] The Court's finding relates only to the present motion. The Court has not screened Plaintiff's complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A. Thus, the Court does not express an opinion on whether the factual allegations in the complaint are sufficient to state a cognizable claim that is "plausible on its face," under the liberal pleading standards for *pro se* litigants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512-13 (2002); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

In his complaint,[3] Plaintiff asserts his due process rights under the Fifth and Fourteenth Amendments have been violated. He contends that in 2017 CDR entered a contract with JPay, Inc. allowing the company to provide services and content to inmates through "their tablets and kiosk. This was a pilot program that took place in approximately five (5) institutions," including SATF. (Doc. 1 at 4.) Plaintiff states that "[a]pparently, CDCR 'gave' tablets to inmates in certain institutions and 'sold' tablets in other institutions." (*Id*.) Plaintiff contends the tablets ranged fin cost from $50 to $150, and that inmates could purchase "stamps for email, games that ranged in prices, and music in which 'singles' usually cost $180 and albums cost more." (*Id*.) Plaintiff states the inmates' family and friends could also make such purchases and send pictures. (*Id.*)

Plaintiff contends inmates who purchased tablets "like the institution Plaintiff(s) are located were never told that the tablets would not be 'their' property by any memorandum or purchase agreement within the institution." (Doc. 1 at 4-5.)

Plaintiff alleges CDCR entered a contract with Global Tel*Link on December 31, 2020 to provide tablets to the inmate population. (Doc. 1 at 5.) In 2021 and the first half of 2022, SATF staff "issued JPay Inc. tablets to inmates who[] had purchase them." (*Id*.) He claims the purchases could be made by family and friends, at the kiosks located in the institution, or via "wire transfer through the kiosk" from an inmate trust or prison account. (*Id*.)

Plaintiff contends inmates learned through word of mouth that the tablets would no longer be permitted and that on a day in August 2022 SATF staff "came to the buildings" advising inmates that "'inmate JPay tablets would now be considered contraband and to turn them over, today would be the last day for amnsty [sic]." (Doc. 1 at 5.) The inmates were further advised that "content would go to the 'cloud'" and that their family "could contact JPay for any money" remaining on an inmate's account. (*Id*.) Plaintiff quotes language from a June 28, 2022 memorandum acknowledging inmates had "received photos, videos and messages, and have paid

---

[3] Plaintiff's complaint has not yet been screened, as required by 28 U.S.C. § 1915A(a), to determine whether it states a cognizable claim or claims against any named Defendant. This Court is one of the busiest district courts in the nation. Complaints are generally screened in the order in which they were filed; there are hundreds of *pro se* prisoner complaints pending screening in this Court. Plaintiff's complaint will be screened in due course.

for some content," and that more information would be provided about how to move that content to their "new tablet" and how to "receive any unused money left" on a tablet. (*Id.*) The memorandum also indicated inmates were allowed to have two tablets during the transition period. (*Id.*) Plaintiff argues the actions taken in August 2022 conflict with the memorandum and CDCR's actions that followed on June 30, 2022, "passing out tablets and inmates property interest in general." (*Id.*) Plaintiff alleges he rarely received paper receipts for JPay transactions and that any records would have "been primarily held or kept on the now deactivated JPay kiosk or Plaintiff(s) tablets that CDCR is and has been confiscating." (*Id.* at 5-6.) Because he does not have proof in the form of receipts, Plaintiff cannot "formulate any resolution with JPay Inc. for unused money or money spent for products or services not rendered." (*Id.* at 6.)

Plaintiff argues his due process rights have been violated because "Plaintiff(s) have a property interest in their tablet(s) and the content the tablets allow them access to that is constitutionally protected" and that CDCR is taking "private property without due process or just compensation." (Doc. 1 at 6.)

By way of relief, Plaintiff's complaint states the following: "Plaintiff(s) seek (1) temporary restraining order and preliminary injunctive relief, (2) the return of their property, (3) to retain their property, (4) compensation for property confiscated and the cost of sending it out of the institution, and (4) Plaintiff(s) be granted leave to amend add Plaintiff(s) and granted 'class status.'" (Doc. 1 at 4.) Attached to Plaintiff's complaint is a copy of correspondence dated June 28, 2022 on letterhead from the Office of Public and Employee Communications, State of California, Department of Corrections and Rehabilitation. (*Id.* at 7.)

The Due Process Clause protects prisoners from being deprived of property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Additionally, prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, *see Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee

8

1  "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth
2  Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson* 468 U.S.
3  at 533.  The Due Process Clause is violated only when the agency "prescribes and enforces
4  forfeitures of property without underlying statutory authority and competent procedural
5  protections." *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing
6  *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations omitted).

7  Initially, the Court notes Plaintiff does not explicitly state he purchased the tablet removed
8  from his cell.  In any event, it appears that Plaintiff is asserting an unauthorized or negligent
9  deprivation of property by state employees. If so, he cannot demonstrate a likelihood of success
10  on the merits where such a deprivation does not amount to a constitutional violation. *See Hudson*,
11  468 U.S. at 533. And, if Plaintiff is asserting an authorized and intentional deprivation of
12  property, amounting to an actionable constitutional violation, likelihood of success on the merits
13  cannot be determined at this stage of the proceedings because it is not known whether defendants
14  had the statutory authority or procedural protections allowing for such an action. *See Greene*, 648
15  F.3d at 1019.

16  Regarding Plaintiff's references to a lack of "paper receipts" for past purchases, Plaintiff
17  makes no related assertion that such paper receipts are required for reimbursement and/or transfer
18  of past content, assuming that is Plaintiff's argument. Hence, it is not clear that Plaintiff lacks a
19  meaningful post-deprivation remedy for this loss.

20  In sum, Plaintiff has not established he is likely to succeed on the merits.  Therefore, his
21  motion should be denied.

22                  B.  <u>Irreparable Harm</u>

23  Plaintiff alleges the actions being taken at SATF concerning JPay tablets and related
24  access to content maintained on those tablets is causing irreparable harm to inmates.

25  "The equitable remedy is unavailable absent a showing of irreparable injury, a
26  requirement that cannot be met where there is no showing of any real or immediate threat that the
27  plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury."
28  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (internal quotation marks and citation

omitted).

The allegations in Plaintiff's complaint and in his motion do not rule out the possibility that harm may result from a continued inability to access his JPay tablet and/or its content. However, the allegations are speculative, particularly concerning the likelihood of a substantial and immediate irreparable injury. While Plaintiff's declaration indicates that tablets like his were to be turned in, sent home to family or friends, or confiscated as contraband, the June 28, 2022 memo attached to Plaintiff's complaint states that as a result of a "pilot tablet program at five prisons since 2018," inmates "were able to buy, or were given, a tablet …." It further indicates that inmates "will now be given a tablet for free" and that such tablets "are being rolled out at all prisons" and that "[t]here is no charge to receive" a tablet. Thus, it is possible a substitute tablet will allow for continued access to similar systems and content. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy ... are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm," quoting *Virginia Petroleum Jobbers Ass'n. v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (emphasis original)).

And although Plaintiff has concerns about the viability of transferring content maintained on a JPay tablet to the state-owned tablet, Plaintiff's concern amounts to only speculation rather than a demonstration of a likely and substantial irreparable injury.  A litigant "seeking *preliminary* relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (citation omitted) (emphasis added). "Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citation omitted) (emphasis added). Here, Plaintiff does not make a showing of a likely irreparable injury, only the possibility of one.

### C. Balance of Equities & Public Interest

Plaintiff's attempts to demonstrate that the balance of equities tips in his favor and that the injunction he seeks is in the public's interest are conclusory. However, even assuming Plaintiff

meets these two *Winter* factors, he cannot meet all four required factors given the Court's findings regarding the likelihood of success on the merits and irreparable harm.

### III.     CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's motion for a temporary restraining order and a preliminary injunction (Doc. 2) be DENIED.

These Findings and Recommendations will be submitted to the District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 27, 2023**                                    _____
                                                                 UNITED STATES MAGISTRATE JUDGE